Executors of Green *vs*. Green.

EXECUTORS OF GREEN VS GREEN.

7p 19
114 264

1. Under the operation of the statute of uses, a jointure made expressly in lieu of dower, barred the widow of her dower; but a devise or bequest will not, unless expressly or impliedly so declared in the will; and in such case, the widow is entitled to her election. '

2. Where no provision is made for the widow by the will of the husband, she may claim dower without any express dissent from the will: and a petition for dower to the Circuit or County court, is a sufficient dissent on the part of the widow from the will; and is equivalent to an abandonment of her claim under it.

3. The evil intended to be remedied by the statute, (Aik. Dig. 132,) was the delay to which a demandant in dower was subjected, at common law, and not the inadequacy of the common law remedy; and as the rights of all the parties interested were sedulously guarded by the common law—so, therefore: in all cases of petition for dower under the statute, it is necessary in the petition, or by suggestion to.the court, for the demandant to state, who are the heirs and tenants of the freehold, and to avoid delay, she may give them notice to appear and contest her claim; and the petition should set forth with reasonable precision all the facts on which the claim rests; and, *semble,* that if after notice, the heirs and terre-tenants do not appear, the fact should be spread upon the record, before the court will be sufficiently authorised to grant the prayer of the petition.

4. Notice to the executor, that he may contest the claim of demandant, and public notice in the gazette, if demandant be herself executrix or administratrix, or there be no tenant in possession, or the person claiming the fee be not in reach of process, are also necessary parts of the proceeding, but *semble* the executor is not.constituted a defendant to protect the rights of those who claim an interest in the freehold, nor can those interested be concluded by his action, or by his failure to act.

Executors of Green *vs.* Green.

5. The executor may shew cause against the claim of the demandant to the personal estate of the deceased, by making known that the estate is not finally settled, or that there are outstanding debts, or by shewing any claim he might have under the will, or that the land is a term and not a freehold; but for any other purpose, he has no right to contest the claim of the widow, and will be considered a mere volunteer: nevertheless, where he has been cited by process of the court to appear and contest the claim of the widow, he cannot be amerced in costs.

Error to the County court of Jackson county.

This was a petition filed by the defendant in error, in the County court of Jackson county, praying that dower be assigned her in the lands and personal property of her husband. The petition alleged the marriage and the death of the husband, in April, eighteen hundred and thirty-three. That he made a will, in which she was not at all provided for, in either real or personal property. The petition described the land, of which it alleged the deceased died seized, and stated, that his personal property was worth from three to four thousand dollars. The petition was filed on the first day of April, eighteen hundred and thirty-four.

Upon this petition, an *alias citation* issued to the plaintiffs in error, as executors of Burkit Green, to appear and show cause, why dower should not be assigned to the widow, which issued on the twenty-second of June, eighteen hundred and thirty-five, and was returnable to the August term after. This was returned executed by the sheriff.

The plaintiffs appeared, and moved the court to dismiss the petition, on the ground, that there had been a discontinuance of the cause; and because the estate of

Executors of Green *vs.* Green.

the deceased was not sufficiently described in the petition. This motion being refused by the court, the plaintiffs pleaded in abatement of the petition, for want of notice, either by advertisement or otherwise, of the filing of the petition. This plea was demurred to, and the demurrer overruled by the court, at the costs of the plaintiffs in error, to be levied of the goods and chattels of their testator. The plaintiffs in error then demurred to the petition, which was overruled by the court.

The court then awarded a writ of admeasurement of dower, directing the sheriff to summon five freeholders, to allot and set off by metes and bounds to the petitioner, her dower in the lands of the deceased, (which were described) and to put her in possession of the same; and also, to allot and set off to her, her portion of the personal estate.

This writ was returned by the sheriff, with an endorsement signed by four persons, who described themselves as commissioners, summoned by the sheriff and duly sworn, and described by metes and bounds, the lands allotted to the widow, and further stated, that they demanded a part of the personal property of the deceased, which the executors refused to deliver. The report was also signed by the sheriff.

This report of the commissioners, was, at the ensuing term of the court, ordered to be recorded.

The plaintiffs assign for error—

1. That the court erred, in not sustaining the demurrer to the petition;

2. In overruling the demurrer, to the plea in abatement;

3. For failing to dismiss the petition, in consequence of the failure to issue citation, until a year after the petition was filed;

4. Because the sheriff made no return to the writ, and because only four persons signed the report, alloting dower as commissioners;

5. The notice served on the executors, was an application for dower only—and the writ required the commissioners to disburse to the widow, a share of the personal property;

6. The petition showed no right to dower, or to a distributive share, shown in the petition;

7. It did not appear that the commissioners were either summoned or sworn;

8. The allotment of dower was vague and uncertain.

*Parsons*, for plaintiff in error.
*Robinson*, contra.

ORMOND, J.—As the settlement of the important questions of law raised on this record, will mainly depend on the proper construction to be put on the statute, regulating this proceeding, we will in the first place ascertain the rights given, and the duties imposed by it.

The act will be found on page 132, of Aikin's Digest, title dower. The third section provides, that "when any person shall die intestate, or shall make his last will and testament, and not therein make any express provision for his wife, by giving and devising unto her, such part or parcel of his real and personal estate, as shall be fully satisfactory to her, such widow may signify her

Executors of Green *vs.* Green.

dissent thereto, in the Superior or County court in the county wherein she resides, at any time within one year after the probate of such will, and then and in that case, she shall be entitled to dower in the following manner, &c.:

It is alleged in the petition, that the husband of the petitioner died without making any provision in his last will and testament for her, either of real or personal property; and it is insisted by the counsel for the plaintiffs in error, that before she can establish her title to dower in the estate of her late husband, she must show, that she DISSENTED from his will, within twelve months after its probate.

The right to dower is a common law right, which can only be impaired by statute; and in order to ascertain how far the statute has imposed restraints or limitations on it, let us enquire how it stands at common law.

The inchoate right of the wife to dower, attaches at the instant of marriage. It is a right highly favored by the common law. No conveyance to the wife during coverture would operate as a substitute for her dower. By the operation of the statute of uses, a jointure made expressly by its terms in lieu of dower, will bar the widow of dower, but a devise or bequest will not, unless expressly so declared in the will; or unless it arise from necessary implication from the will, that it was intended in lieu of dower; in which last case, the chancellor will put her to her election, which she will take. The case of *Strahan* vs. *Sutton*, (3 Vesey, jr.) is a strong case to this effect. The *Master of the Rolls* declares, in substance, that the widow shall not be put to her election,

Executors of Green *vs.* Green.

whether she will take under the will or claim her dower, unless her claim be inconsistent with the will; and in that case, he refused to put her to her election. The very term implies choice, selection. But how can there be a choice between her right to dower, and her rights under the will, when she can take nothing under the will? We cannot suppose the legislature intended such an absurdity, and conclude, that where no provision is made by the will for the widow, she may claim her dower without any express dissent from the will.

A more difficult question arises, as to what act on the part of the widow shall constitute a *dissent* from the will, in cases where she thinks an unsuitable or inadequate provision is made for her. The statute is silent as to the mode of doing the act, though it points out the place where it shall be done; "*In the* Circuit or County court of the county wherein she resides." It would appear from the statute, that any act of public notoriety, either by parol or in writing, in either of the places mentioned in the act, signifying her dissent to the will, would satisfy its terms; the more especially, when we consider, that the statute is in derogation of the common law. At all events, we are satisfied that the filing a petition for dower, in the Circuit or County court, is such an act as will signify her dissent from the will. This will appear more plain, when we consider the first section of the act. " The widow may in all cases, waive the provision made for her in the *will* of her deceased husband, and claim her dower, which shall be assigned her accordingly ; in which case, she shall receive no part of such provision, unless it appear plainly by the will,

Executors of Green *vs.* Green.

that the testator intended it, in addition to her dower."
Now, as she cannot claim under the will, and assert her
right to dower also, the assertion of one is precisely
equivalent to the abandonment of the other.

The fifth and sixth sections of the act, point out the
mode in which the widow shall proceed to have her
dower assigned. This portion of the act seems to have
been rather loosely drawn : but we cannot agree that
the construction put on it by the counsel for the defen-
dant in error, is correct. To assert that the proceedings
are entirely *ex parte*, would be destructive of the very
first principles of justice, and in direct contravention of
the bill of rights ; which declares, that "no one shall
be deprived of life, liberty, or property, but by due course
of law." By the fifth section of the act, the sheriff is
required, after the allotment is made, to put the widow
in possession ; "which possession" the act says, "shall
vest in her an estate for her natural life." The estate
out of which the dower is taken, might be in the posses-
sion of a purchaser, who might receive his first notice
of the claim by the visit of the sheriff, to dispossess him,
without having had any notice of the proceedings which
led to that result, and be driven to his action to regain
the possession of his property.

In order to ascertain what the legislature designed to
accomplish, by the passage of the act in question, let us
enquire into the common law mode of proceeding. The
process given by that law, was by writ of dower *unde
nihil habuit*, or by writ of right of dower, against the
tenant of the freehold. The result of these suits was,
if the demandant was successful, an assignment of dow-

er by the sheriff, after which the doweress was driven to her action of ejectment, to obtain possession. From this it may be seen, how sedulously the common law guarded the rights of all ; for, in the prosecution of the action to obtain the assignment of dower, the defendant might plead the various matters which would bar the widow of her dower : as for example, he could controvert the seizin of the husband—deny that the demandant was lawfully married, or that she had been divorced *a vinculo,* or allege any of the various matters, which would bar her of her dower. The defect of the system was the delay which was caused by it. But while it is clear that it was intended to obviate this objection by giving a summary method to the widow, it is equally as certain, that the legislature could not have intended to break down all the barriers erected by the constitution, for the preservation of private rights.

The act, then, must receive such a construction as will comport with the intention of its framers—and we hold, that in all cases, it is necessary either in the petition, or by suggestion to the court, for the petitioner to state, who are the heirs and tenants of the freehold ; and to avoid delay, she may give them notice to appear at the court to which the application is made, to controvert her claim. If they appear and plead, an issue may be made up to try the fact or facts in controversy ; or they may demur in law to the petition, for it is necessary that the petition should set forth, with reasonable precision, the facts on which her claim to dower rests, so as to make out a *prima facie* case. If, after notice, they do not appear, that fact should be noticed on the record, and the court would

Executors of Green *vs*. Green.

be authorized to grant the prayer of the petitioner. Should any of the heirs or terre-tenants be infants, the court could appoint a guardian *ad litem* to protect their interest. By thus construing the act, we give to it the summary character which it was intended to have, while at the same time the rights of all are secured.

That the legislature contemplated this contestation by the parties in interest, is clear from the language of the act itself. The sheriff is required by the fifth section "to summon five discreet freeholders as commissioners, connected with the parties, neither by consanguinity or affinity, and entirely disinterested," &c. It is manifest, then, that there were to be *parties* to the proceeding, and as the commissioners were to be disinterested persons, not related in any manner to the parties, it follows that the parties spoken of in the act, are such as have an *interest* in the matter. For it is inconceivable why all these pains should be taken to obtain commissioners to allot the dower, but upon the supposition, that there were parties interested in the proceeding, beyond any interest the executor could have in the freehold, as executor merely.

And this brings us to the examination of that portion of the act, which requires notice to be given to the executor—or if the widow be herself the executrix or administratrix, to publish a notice in the gazette. In our opinion, this notice is, under the act, a necessary part of the proceeding.

By the provisions of the fifth section of the act, the commissioners are also directed to allot and set off to the widow, her portion of the personal estate, of which her

Executors of Green *vs.* Green.

husband died possessed; there was therefore a manifest reason why the executor should be made a party to the proceeding, that he might show cause against it, by making known, that the estate was not finally settled, or that there were outstanding debts; and also that he might contest her right, in virtue of any claim he might have under the will of his testator: he might also show that the land out of which the widow claimed her dower, was a term, and not a freehold estate. That the legislature could not have intended to constitute him a defendant, to protect the rights of those who claimed an interest in the freehold, is evident from the consideration, that it would let in all the mischiefs attendant on considering this an *ex parte* proceeding altogether. A construction, which would lead to such an absurdity, as to require one man to defend another's rights, and to conclude the person interested by his action, or by his failure to act,—ought not to be imputed to the legislature, without the clearest conviction that such was their intention. We have already said, that the heirs and terre-tenants should be notified of the proceeding; it might be, however, that the widow claimed dower to land on which there was no tenant in possession, and the person claiming the fee might not be within reach of the service of notice. To subserve some such purpose, and as a mean of giving notice, was probably the reason which influenced the legislature in requiring notice to be given by advertisement. In such a case, if the owner did not appear, it is clear that the right of the widow might be afterwards contested.

The construction we have put on the act, is sanctioned

by the practice under it; and has impliedly received the approbation of this court, in the cases of *Chinubbee* vs. *Nicks*, et. al. (3 Por. 362,) and *Gillespie* vs. *Somerville*, (3 Stew. & Por. 447,) in both of which cases, the controversy was between the widow, and purchasers from the husband.

It follows, from what has been said, that the executor, as such merely, and for any other purpose than as above stated, has no right to contest the widow's claim to dower, and must be considered as a mere volunteer, unless he shows the contrary on the record, by propounding an interest.

What then, is the attitude of the plaintiffs in error—they appear on the record merely as the executors of the deceased, without showing any interest in the lands, out of which the dower is to issue, and therefore having no interest in the matter, have no right to controvert the title of the widow to dower, in the realty.

But as it appears from the record that they were cited by the process of the court, to appear and contest the widow's claim to dower in the estate of her husband, which process must have been sued out at the instance of the petitioner; and there being no lawful authority for this, the judgment of the court below condemning them in the costs, was erroneous; and to reverse that judgment, they might lawfully sue out a writ of error to this court.

The judgment of the court below is also erroneous, as it does not appear that the heirs or terre-tenants have been notified of the application.

The judgment of the court below is therefore reversed

down to the petition, and the case remanded for further proceedings not inconsistent with this opinion.