STATE, *ex rel.* MARION FOSTER, a widow, v. E. E. ANDERS, Chairman, FRED M. VALZ, BEN F. TRENARY, THOMAS C. IMESON, and P. M. ULSCH as members of and constituting the City Commission of the City of Jacksonville, Florida, *et al.*

184 So. 515.

Division B.

Opinion Filed November 16, 1938.

*L. Raymond O'Steen,* for Plaintiff in Error;

*Austin Miller, Gov Hutchison* and *Eli Finkelstein,* for Defendants in Error.

PER CURIAM.—The State of Florida, upon the relation of Marion Foster, a widow, filed a petition in the Circuit Court of Duval County, Florida, against the City of Jacksonville in which it was made to appear that she was the widow of the late Kirby Foster, who had been an active member of the Police Department of the City of Jacksonville, Florida, for a period of thirty-eight consecutive years prior to his

death on January 24, 1934, and was eligible to participate in a Police Pension and Relief Fund of said City provided by Chapter 7657, Special Acts of the Legislature of 1917, and that the deceased not having a minor child under the age of eighteen years, or a mother or father dependent upon him, and the petitioner being the wife of the said Kirby Foster, deceased, that she was, as a matter of law, entitled to participate in the Police Pension and Relief Fund as provided by Chapter 7657, *supra*, controlling the City of Jacksonville. An alternative writ of mandamus, after amendment, was directed to the defendant City and the legal sufficiency thereof tested by motion to quash, which was overruled and an answer or return was made to the alternative writ to the effect that the petitioner, Marion Foster, was not the wife of Kirby Foster at the time of his said death and for that reason she was ineligible to participate in the Police Pension and Relief Fund *supra*. The lower court heard the evidence on the issues, and, after argument of counsel, entered a final judgment for the defendant below. The parties will be referred to in this opinion as they appeared in the lower court, as plaintiff and defendant.

The record discloses that a volume of testimony was taken on the question of whether or not the petitioner was the wife of Kirby Foster, she having admitted upon the stand that no ceremonial marriage was entered into between her and the deceased, but contending that the essentials of a common law marriage existed for a number of years prior to the death of Kirby Foster.

Marriage is a contract founded upon the agreement of the parties. When once formed, a relation is created between the parties which they cannot change, and the rights and obligations of which depend not upon their agreement but upon statutory and common law. It is an institution of society, regulated and controlled by public authority. The

two essentials of a valid marriage at common law are capacity and mutual consent, and it is well settled that under the common law the marriage relation may be formed by words of present assent, *per verba de praesenti,* and without the interposition of any person lawfully authorized to solemnize marriages, or to join persons in marriage. The parties may express the agreement by parol, they may signify it by whatever ceremony their whim or their taste or their religious belief may select; it is the agreement itself, and not the form in which it is couched, with constitutes the contract. The ceremony performed is evidence of a present intention and agreement of the parties. See Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156; Chaves v. Chaves, 79 Fla. 602, 84 So. 672; LeBlanc v. Yawn, 99 Fla. 328, 126 So. 789.

Counsel for plaintiff demanded in the lower court a jury trial upon the issues, and the same being denied, contends in this Court that reversible error was committed. He cites in support of his contention the case of Catlett v. Chestnut, Executor, 100 Fla. 1146, 131 So. 120. The question for consideration in the case, *supra,* was: Has a wife upon dissenting from the provisions of her husband's will and petition for the allotment of dower in his estate the right to a trial by jury on the fact of the existence of the marriage relation when in the proceeding the executor of the will denies the existence of the marriage relation between the petitioner and the testate? It will be observed that the case was brought under the statute for the admeasurement of dower and dissent of the widow from the provisions of her alleged husband's will. This Court properly held in the case that the issues should be decided by a jury. It was not an action in mandamus. This Court has consistently held since 1884, in the case of State, *ex rel.* County Commr's. of Columbia County, v. County Comm'rs. of Suwannee County,

21 Fla. 1, that, in the absence of a statute requiring it, the right of trial by a jury did not exist in mandamus cases. See State, *ex rel.* Davis, v. City of Avon Park, 117 Fla. 556, 151 So. 701 ; 18 R. C. L. par. 313, p. 355.

The next question for consideration is whether or not there are sufficient facts in the record to sustain the judgment of the court below. The plaintiff testified that she and the deceased agreed to be husband and wife and pursuant to that agreement lived together for several years prior to 1934. She assigned as the reason for not having a ceremonial marriage that the deceased was an atheist and preferred to dispense with the procuring of a license and having the ceremony solemnized. It is shown that the petitioner and the deceased lived together in the same house at the Beach near Jacksonville, when the deceased authorized the sale of groceries to his wife, the plaintiff, and likewise arranged a similar working agreement with the garage people in the community. Quite a number of witnesses were called to establish by general reputation that the petitioner and the deceased, Kirby Foster, lived together as husband and wife. There is considerable testimony in the record to support a judgment for the plaintiff. It was not clearly developed by the testimony of the landlady with whom petitioner was living at the time of the alleged marriage that the parties had agreed to marry and pursuant to that agreement cohabited as husband and wife. While the landlady attempted to quote the deceased on some phases of the agreement, she did not know if they had married and neither did the deceased ever admit his inter-marriage with the plaintiff.

The brother of the deceased, his son and daughter testified that no marriage existed between the petitioner and deceased and no cohabitation existed, because the deceased made his home with his daughter and the relation of husband and wife did not exist, but only the relation of a housekeeper existed

with the petitioner. Quite a number of witnesses who were friends and associates of the deceased on the Police Force clearly supports this conclusion. In studying the record the Court is impressed with the testimony of Mittie Tippens, a Police Woman of the City of Jacksonville for many years, frequently thrown with deceased because of their employment and assignments around the Police Station. She testified that frequently she had talked with the deceased and knew him to be a man of religious convictions, and recalled on one occasion when she, or some one with whom both were acquainted, was about to undergo a major surgical operation, the deceased suggested that it might be well that she pray over the situation and that he (the deceased) too would remember her in his prayers. Friends and relatives of the deceased stated that he was a man of deep religious convictions and attended religious services each Sunday during the lifetime of his first wife; and it was also pointed out that he had preached or was a Minister of Gospel. It will be oberved that this testimony destroys the statement of the petitioner to the effect that the deceased was an atheist and desired to cohabit with her independently of a ceremonial marriage.

We have here a case with a large number of witnesses on both sides offering and giving conflicting testimony which was considered and decided by the Court below, with the result that one side or the other must be keenly disturbed or disappointed at the judgment rendered. This Court has consistently held that where there is conflicting evidence on the issues made, and the verdict is not manifestly against the weight of the evidence, the Court should not interfere with or set aside the verdict of the jury. See Harbeson Lbr. Co. v. Anderson, 102 Fla. 731, 136 So. 557. While the judgment here was not rendered by a jury, the trial court heard the testimony and our study of the record convinces

us that there is substantial evidence to support the judgment. The evidence appears to preponderate, as we find it, in favor of the judgment rendered in the lower court. We do not think or believe that a new trial will serve any useful purpose. See Allen v. Lewis, 43 Fla. 301, 31 So. 286; Clary v. Isom, 55 Fla. 384, 45 So. 994. The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL, C. J., and BUFORD, J., concur in the opinion and judgment.

THOMAS, J., not participating.